**PUBLIC COPY – SEALED MATERIAL DELETED**

Case No. 22-9530

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

SINCLAIR WYOMING REFINING COMPANY LLC,
*Petitioner,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Respondent.*

PETITION FOR REVIEW FROM U.S. ENVIRONMENTAL
PROTECTION AGENCY

## PETITIONER'S OPENING BRIEF

Jeffrey R. Holmstead
Brittany M. Pemberton
Bracewell LLP
2001 M Street N.W.
Suite 900
Washington, D.C. 20036
(202) 828-5800 (telephone)
(202) 857-4812 (facsimile)
Jeff.Holmstead@bracewell.com
Brittany.Pemberton@bracewell.com

*Counsel for Sinclair Wyoming
Refining Company LLC*

**Dated: June 8, 2023**

## ORAL ARGUMENT REQUESTED

## CORPORATE DISCLOSURE STATEMENT

Sinclair Wyoming Refining Company LLC certifies it is currently a wholly owned subsidiary of Sinclair Oil LLC, which is a wholly owned subsidiary of HF Sinclair Corporation, a publicly held company. No other publicly held company has a 10% or greater ownership interest in Sinclair Wyoming Refining Company LLC. Throughout 2018 (the year at issue in the challenged agency action and for which relief is sought), Sinclair Oil LLC was then known as Sinclair Oil Corporation and was a wholly owned subsidiary of REH Company (which was then known as The Sinclair Companies). REH Company is a privately held corporation with no parent corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................................i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF PRIOR OR RELATED APPEALS........................................ vii

GLOSSARY OF TERMS ..................................................................... viii

INTRODUCTION ..................................................................................1

SUMMARY OF EPA'S DEALINGS WITH SINCLAIR IN THIS CASE .............3

STATEMENT OF JURISDICTION.........................................................8

STATEMENT OF THE ISSUES...........................................................12

STATUTES AND REGULATIONS.......................................................12

STATEMENT OF THE CASE..............................................................12

    I.      Statutory and Regulatory Background. ...................................12

          A.     The RFS Program.....................................................12

          B.     Small Refinery Exemptions .........................................14

    II.    The History of Sinclair's 2018 Exemption Petition. ................16

          A.     Sinclair's 2018 SRE Petition..........................................17

          B.     EPA's August 2019 Denial of Sinclair's Petition..........18

          C.     EPA's 2021 Exemption Decision ...................................21

          D.     Litigation Over 2021 Exemption Decision ....................24

          E.     Sinclair's Efforts to Get its RINs Back from EPA. .......26

          F.     EPA's 2022 Exemption Decision and Alternative RFS
                Compliance Demonstration Approach............................28

SUMMARY OF ARGUMENT ..............................................................29

STANDARD OF REVIEW ...................................................................32

ARGUMENT ........................................................................................33

    I.      EPA's Refusal to Treat Sinclair Like Similarly Situated Parties
          was Arbitrary, Capricious, and an Abuse of Discretion...........33

     A.    EPA's Treatment of Sinclair Is Fundamentally Different than Its Treatment of the 31 Other Small Refineries that Received 2018 Exemptions. ............................................................. 33

     B.    EPA's Explanation for Not Refunding Sinclair's 2018 Compliance RINs Is Unavailing. .................................................... 35

II.    The Court Should Set a Deadline of 90 Days for EPA to Act on Remand. .......................................................................................... 40

CONCLUSION ...................................................................................... 41

STATEMENT REGARDING ORAL ARGUMENT ............................. 43

CERTIFICATE OF COMPLIANCE ..................................................... 44

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 45

CERTIFICATE OF SERVICE ................................................................ 46

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ace Motor Freight, Inc., v. I.C.C.*,
   557 F.2d 859 (D.C. Cir. 1977) .................................................................31, 36

*ANR Storage Co. v. FERC*,
   904 F.3d 1020 (D.C. Cir. 2018) ..................................................................33, 40

*Baltimore Gas & Elec. Co. v. FERC*,
   954 F.3d 279 (D.C. Cir. 2020) ...........................................................................35

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..............................................................................................9

*Burlington Northern & Santa Fe Ry. Co. v. Surface Transp. Bd.*,
   403 F.3d 771 (D.C. Cir. 2005) ..............................................................30, 33, 35

*Clean Wisconsin v. EPA*,
   964 F.3d 1145 (D.C. Cir. 2020) .........................................................................33

*In re FCC 11-161*,
   753 F.3d 1015 (10th Cir. 2014) ..................................................................32, 39

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ............................................................................................10

*Great Lakes Commc'n Corp. v. FCC*,
   3 F 4th 470 (D.C. Cir. 2021) ........................................................................33, 35

*Hermes Consol., LLC v. EPA*,
   787 F.3d 568 (D.C. Cir. 2015) ...........................................................................14

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
   141 S. Ct. 2172 (June 25, 2021) .......................................................14, 25, 26, 41

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
   141 S. Ct. 974 (Jan. 8, 2021) .............................................................................20

*Kern Oil & Refin. Co. v. EPA*,
   840 Fed. App'x 188 (9th Cir. 2021) ............................................................32, 41

*Kern Oil & Refining Co. v. EPA*,
 2022 WL 3369528 (9th Cir. Aug. 16, 2022) (unpublished) ............................. 10

*Kirk v. Comm'r of Social Sec. Admin.*,
 987 F.3d 314 (4th Cir. 2021) ...................................................... 1, 32, 34

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ........................................................................ 32, 39

*Producers of Renewables United for Integrity, Truth, and
 Transparency v. EPA*,
 2022 WL 538185 (10th Cir. Feb. 23, 2022) ...................................... 11

*Pub. Citizen Health Rsch. Grp. v. Brock*,
 823 F.2d 626 (D.C. Cir. 1987) ........................................................ 40

*Quest Commc'ns Int'l, Inc. v. FCC*,
 398 F.3d 1222 (10th Cir. 2005) ...................................................... 32

*Renewable Fuels Association v. EPA*,
 948 F.3d 1206 (10th Cir. 2020) ............................................... 6, 27, 37

*Sinclair Wyo. Refin. Co. v. EPA*,
 887 F.3d 986 (10th Cir. 2017) ........................... 11, 12, 13, 14, 16, 19

*Steger v. Def. Investigative Serv. Dep't of Def.*,
 717 F.2d 1402 (D.C. Cir. 1983) .................................................. 1, 32, 33

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*,
 435 U.S. 519 (1978) ...................................................................... 40

*Westar Energy Inc. v. FERC*,
 473 F.3d 1239 (D.C. Cir. 2007) .................................................. 33, 39

*Willis Shaw Frozen Express, Inc. v. I.C.C.*,
 587 F.2d 1333 (D.C. Cir. 1978) .................................................. 30, 35

*Wynnewood Refin. Co. LLC v. EPA*,
 No. 22-1178 (D.C. Cir.) ................................................................ 28

**Statutes**

5 U.S.C. § 706(2) ..............................................................................32

5 U.S.C. § 706(2)(A) ........................................................................12

42 U.S.C. § 7545(o) ..........................................................................11

42 U.S.C. § 7545(o)(2)(A) ................................................................13

42 U.S.C. § 7545(o)(2)(B) ................................................................12

42 U.S.C. § 7545(o)(9)(A) ................................................................14

42 U.S.C. § 7545(o)(9)(B) .............................................15, 16, 18, 40

42 U.S.C. § 7607(b)(1) ..........................................................8, 9, 17

**Regulations**

40 C.F.R. § 80.1406(b) .....................................................................13

40 C.F.R. § 80.1427 ..........................................................................13

40 C.F.R. § 80.1427(a)(5) .................................................................13

40 C.F.R. § 80.1427(a)(6)(i) .......................................................10, 13

40 C.F.R. § 80.1429 ..........................................................................13

40 C.F.R. § 80.1451 ..........................................................................10

**Other Authorities**

72 Fed. Reg. 23,900 (May 1, 2007) ..................................................13

82 Fed. Reg. 58,486 (Dec. 12, 2017) ...............................................13

87 Fed. Reg. 5,696 (Feb. 2, 2022) ...................................................10

87 Fed. Reg. 39,600 (July 1, 2022) ..................................................10

EPA, RIN Trades and Price Information, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rin-trades-and-price-information (last visited Nov. 9, 2022) ...........................................14

Gov't Accountability Office, Renewable Fuel Standard: Actions
    Needed to Improve Decision-Making in the Small Refinery
    Exemption Program at 20 (Nov. 2022),
    https://www.gao.gov/assets/gao-23-104273.pdf ...............................................40

**STATEMENT OF PRIOR OR RELATED APPEALS**

This case is related to three prior cases filed before this Court: *Sinclair Wyoming Refining Co. v. EPA*, No. 19-9562; *Renewable Fuels Association v. EPA*, No. 21-9518; and *Sinclair Wyoming Refining Co. v. EPA*, No. 21-9528. Three prior cases filed before the D.C. Circuit are also related: *Sinclair Wyoming Refining Co. v. EPA*, No. 19-1196; *Renewable Fuels Association v. EPA*, No. 20-1036; and *Sinclair Wyoming Refining Co. v. EPA*, No. 19-1196.

# GLOSSARY OF TERMS

| | |
|---|---|
| ACD | U.S. Environmental Protection Agency, *April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries,* EPA-420-R-22-006 (Apr. 2022) |
| EPA | U.S. Environmental Protection Agency |
| DOE | U.S. Department of Energy |
| SRE | Small Refinery Exemption |
| SWR | Sinclair Wyoming Refinery |
| RFA | Renewable Fuels Association |
| RFS | Renewable Fuel Standard |

## INTRODUCTION

Federal courts have observed that "a federal agency 'can be said to be at its most arbitrary' when it 'treat[s] similar situations dissimilarly." *Kirk v. Comm'r of Social Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (quoting *Steger v. Def. Investigative Serv. Dep't of Def.*, 717 F.2d 1402, 1406 (D.C. Cir. 1983)). An agency "cannot, despite its considerable discretion, treat similar situations dissimilarly, and, indeed, can be said to be at its most arbitrary when it does so." *Steger v. Def. Investigative Serv. Dep't of Def.*, 717 F.2d 1402, 1406 (D.C. Cir. 1983).

This is just such a case. Based on criteria it has used for many years, EPA determined that 32 small refineries were entitled to "small refinery exemptions" under the federal Renewable Fuels Standard ("RFS") for 2018. EPA granted exemptions to 31 of these refineries in August 2019, and it immediately returned to all these refineries certain valuable regulatory credits known as "Renewable Identification Numbers" or "RINs" that they had previously submitted to EPA to comply with the 2018 RFS standard.

Because of a clear mistake that EPA has since acknowledged, EPA did not grant a small refinery exemption to Sinclair Wyoming Refining Co. LLC ("Sinclair" or "Company") until January 2021. Even so, EPA granted this exemption using the same criteria that it had used in granting exemptions to the

other 31 refineries 17 months earlier. However, EPA refused at that time to return the RINs that Sinclair submitted to comply with the 2018 RFS standard ("Compliance RINs") and has steadfastly refused to do so ever since. In all material respects, Sinclair's situation is identical to the situation of the 31 other small refineries, but EPA has refused to provide the same benefit to Sinclair that it provided to all of them.

Most galling to Sinclair, it is undisputed that, were it not for EPA's own mistake, Sinclair would have been exempted from 2018 compliance in August 2019 and would have received ███████████████ worth of RINs back from EPA at that time. As it is, more than three years later, Sinclair has received none of the regulatory relief to which it is entitled. EPA's refusal to return Sinclair's 2018 RINs has improperly imposed a substantial cost upon Sinclair and placed it at a competitive disadvantage.

To be sure, the procedural background here is complicated and involves multiple lawsuits, a Supreme Court decision, a change in presidential administrations, a fundamental shift in EPA's approach to small refinery exemptions, and a decision to apply that approach retroactively. As discussed further below, EPA eventually asked this Court and the U.S. Court of Appeals for the D.C. Circuit to remand all the 2018 small refinery exemptions it had granted (32 in total). Then, using a new approach for evaluating exemption requests, it

retroactively denied all of them. However, EPA decided that the 31 small refineries that received their exemptions in 2019 would be allowed to keep the 2018 RINs that EPA had returned to them. After this decision, Sinclair requested that EPA return its 2018 RINs too, so that it would be in the same position as all the other similarly situated refineries, but EPA denied this request. It is this denial that Sinclair challenges in this case.

## SUMMARY OF EPA'S DEALINGS WITH SINCLAIR IN THIS CASE

The decision challenged here is just the most recent of several injustices that EPA has visited upon Sinclair over the last three years. The following is not just a list of grievances (although it is that too) but provides background needed to understand this case.

### EPA ignored its statutory deadline for acting on Sinclair's petition.

Sinclair filed its 2018 small refinery exemption ("SRE") petition on December 21, 2018, making EPA's statutorily imposed 90-day deadline to act on Sinclair's petition March 21, 2019. However, EPA ignored the statutory deadline and took a total of 231 days to act on the petition. While Sinclair waited, the March 31, 2019 RFS compliance deadline for 2018 came and went, so Sinclair retired ████████ ███████████████████ to comply with the 2018 RFS standard. If EPA had met its statutory deadline and granted Sinclair's SRE petition at that time, Sinclair would never have needed to submit ██████████████████████ to EPA.

**EPA denied Sinclair's 2018 exemption petition due to its own error that it has since acknowledged.** Finally, on August 9, 2019, EPA took action on the 36 SRE petitions that small refineries had submitted for the 2018 compliance year. The Agency granted 31 of them and denied five, including Sinclair's, explaining that its decisions were based solely a "scoring matrix" that EPA received from the Department of Energy ("DOE") for each refinery. This was the same scoring matrix that DOE had used for many years. ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Sinclair was puzzled by the denial and brought a lawsuit to challenge it. When EPA produced the index to the administrative record in that proceeding, Sinclair realized that EPA had failed to send to DOE a critical document that Sinclair had submitted in support of its SRE petition. If EPA had transmitted this document to DOE, Sinclair's score on the DOE's scoring matrix would have been high enough to guarantee it an exemption. EPA would have granted Sinclair's 2018 exemption in August 2019 and would have promptly returned the RINs that Sinclair had previously submitted for 2018 compliance—just as the Agency did for the 31 other refineries that received exemptions at that time.

**EPA declined to correct its error for almost two years for what it admitted were political reasons.** EPA officials acknowledged the error, but rather

than moving quickly to correct it, EPA declined to take any action on it for another 524 days. As discussed below, EPA officials informed Sinclair that their hands were tied because of White House concerns that granting another small refinery exemption might cause political problems in key farm states during a presidential election year.

**EPA finally corrected the error but refused to defend its decision when it was challenged in court.** With the 2020 presidential election passed, EPA finally granted Sinclair's 2018 SRE petition on January 14, 2021—more than two years after Sinclair submitted it—based on corrected and now-accurate scoring from DOE. In its decision, EPA acknowledged the error it had made in its original denial decision. A renewable fuels trade association immediately sued EPA, challenging the exemption and seeking an immediate administrative stay and a stay pending review to prevent EPA from returning Sinclair's RINs. Because the new administration was skeptical of last-minute actions by the Trump Administration, EPA declined to take a position on the stay motion. Rather, it merely told this Court that "it did not object to the stay, provided that the Court is otherwise satisfied that the movant met all the requisite factors for a stay."

**Even after this Court denied the stay motion, EPA refused to return Sinclair's 2018 RINs.** Sinclair intervened in the trade association's case and prevailed against the stay motion in March 2021, but not before it amassed more

than $300,000 in legal bills for opposing stay motions (originally in the D.C. Circuit and then in this Court). After this Court denied the stay motion and dissolved the administrative stay, Sinclair contacted the Agency to work through the details of getting its 2018 RINs back. But remarkably, EPA simply refused to return them. The Agency also refused to provide any legal basis for its refusal to return them, despite several exasperated requests from Sinclair.

**After Sinclair filed a lawsuit seeking an adequate remedy for its 2018 exemption, EPA sought voluntary remands of all its 2018 SRE decisions.** In May 2021, Sinclair filed a petition for review in this Court to challenge EPA's refusal to return Sinclair's RINs. Shortly thereafter, however, EPA decided that it wanted to reconsider all its 2018 SRE decisions, asserting that it was required to reconsider them based on this Court's decision in *Renewable Fuels Association v. EPA*, 948 F.3d 1206 (10th Cir. 2020). Thus, the Agency sought and obtained voluntary remands from both this Court (where Sinclair's challenge was pending) and the D.C. Circuit (where RFA had challenged the 31 SREs that EPA granted in 2019). In this Court, EPA actually sought and obtained vacatur and remand of Sinclair's 2018 exemption, while only seeking remand of all the other 2018 decisions.

**EPA then determined that no small refineries are entitled to small refinery exemptions but allowed 31 other small refineries to keep the 2018**

**RINs that EPA had returned to them.** Nearly a year after the voluntary remands, EPA announced that it had changed its approach to small refinery exemptions and would no longer rely on DOE's scoring matrix. In an April 2022 decision, EPA concluded that *no* small refinery warranted relief for 2018 (or *any* year, for that matter). At the same time, however, EPA issued an "Alternative RFS Compliance Demonstration Approach" in which it effectively forgave the 2018 RFS compliance obligation of the 31 refineries that EPA had exempted in August 2019. Thus, even though the Agency retroactively denied their 2018 exemption requests, it did not require these 31 small refineries to repay the 2018 RINs that EPA had returned to them after their exemption requests were initially granted in 2019. The document did not mention Sinclair. It did not return Sinclair's RINs or provide any rationale for treating Sinclair differently that the other 31 small refineries to which it had granted exemptions based on DOE's scoring matrix.

**EPA again refused to refund Sinclair's 2018 RINs.** Given that all the other similarly situated small refineries had been allowed to keep their 2018 RINs, Sinclair again requested that EPA return its Compliance RINs. Sinclair had received a 2018 exemption based on the same criteria that EPA had used to grant 2018 exemptions to 31 other small refineries. The only difference is that, because of EPA's own mistake, Sinclair did not receive its exemption until a year and a half after the other small refineries received theirs. Otherwise, Sinclair's situation

with respect to its 2018 small refinery exemption is the same as the situation of 31 of its competitors. Notwithstanding this fact, EPA denied Sinclair's request on April 19, 2022, forcing Sinclair to file this petition for review.

There is no rational basis for EPA to treat Sinclair any differently than it treated 31 other small refineries. EPA's sole explanation for refusing to return Sinclair's RINs—that Sinclair's exemption was vacated in May 2021as part of a voluntary remand—ignores the fact that EPA asked for vacatur of Sinclair's exemption but not for the other 31 exemptions. Thus, it is just another example of disparate treatment, not an explanation for it. Nowhere does EPA even try to explain why it sought voluntary remand for the 31 other 2018 SREs and vacatur and voluntary remand for Sinclair's 2018 SRE.

EPA's denial of Sinclair's request for the return of its 2018 RINs is arbitrary and capricious. The Court should vacate it and remand Sinclair's request to EPA with instructions that the Agency provide an adequate remedy to Sinclair within 90 days of remand, as two other U.S. Courts of Appeals have recently done in similar cases involving small refinery exemptions.

## STATEMENT OF JURISDICTION

The Clean Air Act grants to the courts of appeals jurisdiction over challenges to final agency actions filed within 60 days of the date of the action. 42 U.S.C. § 7607(b)(1). Generally, an agency action is "final" if it satisfies two

conditions: "[F]irst, the action must mark the 'consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).[1]

This Court has jurisdiction because Sinclair's petition timely challenges a final agency action. EPA issued its decision on April 19, 2022, *see* R-8, and Sinclair filed this case on May 24, 2022—well within the 60-day statutory deadline dictated by § 7607(b)(1). The denial is a final agency action because it rejects Sinclair's request that EPA refund ████████████████████████ that Sinclair submitted to EPA to demonstrate compliance with the 2018 RFS program obligations (the "Compliance RINs") of the Sinclair Wyoming Refinery ("SWR").

EPA's denial definitively states that Sinclair's "the 2018 RINs will not be returned." R-8. This, EPA says, is the "direct answer" to Sinclair's request. EPA's decision also has legal consequences for Sinclair, definitively determining Sinclair's right to a refund of its RINs.

Sinclair also has standing to bring this case. EPA's decision caused actual concrete, particularized injury to Sinclair that a favorable decision in this case

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

would redress. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The decision injured Sinclair by denying the Company a valuable benefit that EPA provided to all other small refineries that were similarly situated.

In April 2022, when Sinclair made its request for the return of its 2018 RINs and EPA denied it, the Compliance RINs had substantial monetary value. During the pendency of this ligation, however, the Compliance RINs "expired" and no longer have any value.[2] Even so, a favorable decision from this Court would redress Sinclair's injury, as the Ninth Circuit recently recognized in another case involving small refinery exemptions. In *Kern Oil & Refining Co. v. EPA*, Kern submitted RINs to EPA to meet its annual obligations on the compliance deadline. Subsequently, Kern filed an SRE petition that EPA granted, albeit 148 days after EPA's 90-day statutory deadline. No. 21-71246, 2022 WL 3369528, at *3 (9th Cir. Aug. 16, 2022) (unpublished). EPA returned Kern's RINs, but some of them, "by the EPA's own estimates" had "lost value as a result of the agency's delay." *Id*. As

---

[2] When Sinclair retired the Compliance RINs on March 31, 2019, the RINs were due to expire on March 31, 2020, 40 C.F.R. § 80.1427(a)(6)(i), but EPA subsequently, EPA extended the 2019 RFS compliance deadline for small refineries—and therefore, the life of Sinclair's Compliance RINs—to September 1, 2022. *See* 87 Fed. Reg. 5,696, 5,698 (Feb. 2, 2022) (extending the deadline to the "next quarterly reporting deadline after the effective date of the 2021 standards); 87 Fed. Reg. 39,600 (July 1, 2022) (establishing that the 2021 standards take effect August 30, 2022); 40 C.F.R. §80.1451, tbl. 1 (RFS quarterly reporting deadlines are June 1, September 1, December 1, and March 31).

the Ninth Circuit noted, "EPA has the authority under the RFS statute [42 U.S.C. § 7545(o)] to remedy this injury via a tailored RIN replacement order." *Id*. Therefore, the Ninth Circuit remanded "to the EPA with instructions to issue a remedy order that compensates Kern Oil for the loss in value that its [] RINs experienced between the time when the EPA should have acted on Kern Oil's SRE petition in October 2018 and when it ultimately granted the petition in March 2019." *Id*.

Similarly, after this Court ruled that EPA had unlawfully denied Sinclair's 2014 and 2015 SRE petitions, *see, e.g.*, *Sinclair Wyo. Refin. Co. v. EPA*, 887 F.3d 986, 999 (10th Cir. 2017), EPA itself recognized that merely returning expired RINs would not provide a meaningful remedy. It therefore issued "replacement RINs" to compensate Sinclair for the RINs that the Company had previously submitted for compliance but had expired during the pendency of the litigation. *See Producers of Renewables United for Integrity, Truth, and Transparency v. EPA*, 2022 WL 538185 at *1 (10th Cir. Feb. 23, 2022) (describing EPA's issuance of replacement RINs to small refineries). Thus, a favorable decision from this Court would redress the injury that Sinclair has suffered because of EPA's unlawful action.

## STATEMENT OF THE ISSUES

1.     Whether EPA's April 19, 2022 decision is contrary to statutory authority, arbitrary or capricious, an abuse of EPA's discretion, or otherwise not in accordance with law, or without observance of procedure required by law under 5 U.S.C. § 706(2)(A).

2.     Whether EPA violated the Clean Air Act or the Administrative Procedure Act by failing to provide a reasonable basis for its decision.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are set forth in the Addendum.

## STATEMENT OF THE CASE

### I.     Statutory and Regulatory Background.

### A.     The RFS Program

Under the RFS program, Congress prescribed annual target volumes for four types of renewable fuel that must be introduced into the nation's fuel supply each year and that increase year-over-year through 2022. *See* 42 U.S.C. § 7545(o)(2)(B)(i); *Sinclair*, 887 F.3d at 988. EPA administers the RFS program by establishing annual "applicable volumes" of each of the four renewable fuels in the statute. 42 U.S.C. § 7545(o)(2)(B)(ii). EPA uses these volumes, along with projections of annual U.S. fuel usage, to calculate a percentage standard that refineries and other obligated parties must use to determine their annual Renewable

Volume Obligation, which is their individual share of the nationwide requirement. *Id.* § 7545(o)(2)(A)(i), (iii); 40 C.F.R. § 80.1406(b).[3]

At the end of the compliance year, each refinery must demonstrate compliance with its Renewable Volume Obligation by surrendering to EPA RINs that represent renewable fuel blended into transportation fuel in the United States. 40 C.F.R. § 80.1429. RINs may only be used to demonstrate compliance for the calendar year in which they were generated or the following calendar year. 40 C.F.R. § 80.1427(a)(6)(i).[4] Refineries can accumulate RINs to meet their RFS obligations (1) by blending renewable fuels into transportation fuel to obtain RINs or (2) by purchasing RINs owned by other parties. *Id.* § 80.1427; *Sinclair*, 887 F.3d at 989.

The flexibility to trade RIN credits is important for the overall RFS program because some refineries "do not have access to renewable fuels or the ability to blend them, and so must use credits to comply." 72 Fed. Reg. 23,900, 23,904 (May 1, 2007). The RIN market is unregulated and often volatile. According to EPA

---

[3] In 2018, EPA required obligated parties to use 19.29 billion total gallons of renewable fuels, 4.29 billion gallons of which had to be advanced biofuels (which breaks down further into 0.288 billion gallons of cellulosic, 2.10 billion gallons of biomass-based diesel, and 1.902 billion gallons of other advanced biofuels). The remaining 15 billion of the 19.29 billion gallon requirement must be corn or so-called "conventional ethanol" for which ethanol RINs demonstrate compliance. 82 Fed. Reg. 58,486, 58,523 (Dec. 12, 2017).

[4] These "carryover RINs" can be used to satisfy only twenty percent of the subsequent year's compliance obligations. *See* 40 C.F.R. §80.1427(a)(5).

data, prices for 2018 vintage ethanol RINs (which constitute the majority of RINs under the RFS program) have ranged from $0.11 to $1.59 in recent years. EPA, RIN Trades and Price Information, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rin-trades-and-price-information (last visited Nov. 9, 2022).

## B.    Small Refinery Exemptions

When Congress adopted the RFS program, it recognized that "escalating [RFS] obligations could work special burdens on small refineries that lack the 'inherent scale advantages of large refineries.'" *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2175 (June 25, 2021) (quoting *Sinclair*, 887 F.3d at 989), and that small refineries "have more limited blending capacity than larger refineries"—meaning that they would have to rely disproportionately on the RIN market. *Hermes Consol., LLC v. EPA*, 787 F.3d 568, 572 (D.C. Cir. 2015). As result, Congress initially exempted all small refineries through 2010 and required EPA to provide an additional exemption of at least two years to any refineries that would suffer "disproportionate economic hardship" because of RFS compliance, as determined by a 2011 DOE study ("DOE Study"). 42 U.S.C. §7545(o)(9)(A)(i), (ii).

In the DOE Study, the Department acknowledged that "[i]f certain small refineries must purchase RINs that are far more expensive than those generated

-14-

through blending, this will lead to disproportionate economic hardship for those effected [*sic*] entities." DOE, Small Refinery Exemption Study: An Investigation into Disproportionate Economic Hardship at 2 (Mar. 2011), https://www.epa.gov/sites/default/files/2016-12/documents/small-refinery-exempt-study.pdf. DOE explained: "[T]here are numerous circumstances when RIN prices could rise, increasing the cost of compliance and perhaps increasing the cost of compliance more for refineries that rely on RINs for compliance compared to those that do not." DOE Study at 3. Additionally, DOE noted "the compliance cost may be essentially zero for refiners that fulfill their obligation through blending renewable fuels." *Id.* "Such refiners would have blended even without the mandate" and are able to profit from the RFS program by selling RINs to companies that do not have access to renewable fuels. DOE Study at 3. Based on this conclusion and data collected from a number of small refineries, the DOE Study determined that 13 small refineries—including those owned by Sinclair— would continue to suffer disproportionate economic hardship if compliance with the RFS Program were required. DOE Study at viii, 37.

Finally, Congress provided that a small refinery "may at any time petition [EPA] for an extension of the exemption . . . for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). EPA must act on any such exemption petition within 90 days. *Id.* § 7545(o)(9)(B)(iii). When reviewing

-15-

exemption petitions, EPA must "consult" with DOE and consider the findings of the DOE Study as well as "other economic factors." *Id.* § 7545(o)(9)(B)(ii).

When EPA receives an exemption petition, it historically has passed it along to DOE to evaluate the petition based on a "scoring matrix" DOE developed in the DOE Study. Until April 2022, consultation between EPA and DOE typically took the form of a DOE recommendation based on a two-part scoring matrix. *See Sinclair*, 887 F.3d at 993–94; DOE Study at 32. If a refinery scores above 1.0 on both parts, DOE recommended that EPA grant the refinery a full exemption. DOE Study at 37. From 2018 until April 2022, if a small refinery scored above 1.0 on only one half of the matrix, DOE recommended a partial exemption, *Sinclair*, 887 F.3d at 994, but EPA's policy was to grant a full exemption to such refineries. *See* Ex. A at 2, RFA Petition for Review, https://www.epa.gov/sites/default/files/2019-11/documents/rfa_19-1220_pfr_10222019.pdf ("SRE Memo").

## II.    The History of Sinclair's 2018 Exemption Petition.

One important thing about this case is undisputed: if EPA had passed along to DOE a key document that Sinclair submitted as part of its 2018 SRE petition, Sinclair would have received an exemption at the same time as all the other small refineries that received 2018 exemptions; and EPA, at that time, would have returned the Compliance RINs.

However, because of EPA's failure to provide this document to DOE, the history of EPA's dealings with Sinclair regarding its 2018 SRE petition is lengthy and replete with litigation involving the two parties and the Renewable Fuels Association ("RFA"), a trade association that represents biofuels producers and opposes all SRE exemptions. The history is even more complicated due to several disputes among these parties over the appropriate venue to challenge various EPA actions under 42 U.S.C. § 7607(b)(1). As a result, the same challenge was sometimes filed in both this Court and in the D.C. Circuit. Here, we provide a summary of just the key proceedings that are needed to understand the context for the current case.

### A.    Sinclair's 2018 SRE Petition

Sinclair is a family-owned company that, through March 17, 2021, owned and operated the Rawlins, Wyoming refinery—an important source of fuel supply to consumers in Wyoming and adjoining states. Sinclair submitted its 2018 SRE petition on December 21, 2018 to ensure that, if EPA met its 90-day statutory deadline, the Company would receive a decision before the March 31, 2019 deadline for 2018 compliance. EPA Jan. 14, 2021 SRE Decision, Ex. A to Sinclair Supplement to Motion to Seal, *Sinclair Wyo. Refin. Co. v. EPA*, No. 21-9528 (10th Cir. filed Mar. 29, 2021), Doc. 010110500782.

In its petition, Sinclair explained that, for structural reasons, █████████ ████████████████████████████████████████████████████ ████████████████████████ R-16 at 1–2. Sinclair also provided specific information to show that it should receive high enough scores in DOE's scoring matrix to support EPA granting Sinclair's petition for 2018, as it had for ████ ████████████. R-16 at 1. While the administrative record was still open, Sinclair also submitted a spreadsheet showing that █████████████████████ ██████████████████████████████████████████ ██████—information relevant to one of DOE's scoring criteria that assesses whether the small refinery operates in a "niche market." R-2 at 1; R-16 at 1-2; *see also* DOE Study 31, 33, 35.

Under 42 U.S.C. § 7545(o)(9)(B)(iii), the deadline for EPA to grant or deny Sinclair's petition was March 21, 2019. When EPA missed the deadline, Sinclair— —with the compliance deadline imminent and not knowing whether it would receive a 2018 exemption for SWR— retired the Compliance RINs (specifically, ██████████████████) on March 31 of that year to meet its 2018 RFS obligations. R-11.

## B. EPA's August 2019 Denial of Sinclair's Petition

On August 9, 2019, EPA issued the SRE Memo, a generic two-page document that constituted the decision in which EPA granted SREs for 31

refineries and denied them for Sinclair and four other refineries. *See* SRE Memo. This memo did not include any refinery-specific-explanation for EPA's decisions, and, contrary to the practice the Agency had always followed previously, EPA did not provide an individual decision document responding to Sinclair's exemption petition. *See, e.g.*, *Sinclair*, 887 F.3d at 990 (describing the individual exemption decision provided to that refinery).

Instead, EPA said only that it was "denying exemptions for those 2018 small refinery petitions where DOE recommended no relief" because the refineries had not scored high enough on DOE's scoring matrix. SRE Memo at 2. As noted above, Sinclair had received high-enough DOE scores for exemptions ██████ ████████████████ and there had not been any material change in the refinery's situation throughout that time, so the 2018 denial seemed inexplicable. DOE's scoring matrix for the refinery simply showed that, for 2018, Sinclair had received scores on two items that were lower than they had been in previous years, including the so-called "niche market" score. DOE Study at 31, 35. There was no explanation for the drop in scores.

Because of an unusual feature of the Clean Air Act's judicial review provision, Sinclair filed two petitions for review to challenge this denial: one in this Court (*Sinclair Wyoming Refining Co. v. EPA*, No. 19-9562) and one in the

D.C. Circuit (*Sinclair Wyoming Refining Co. v. EPA*, No. 19-1196).[5] Although Sinclair submitted an opening brief in the D.C. Circuit case, neither court issued a decision on the merits, and each case was held in abeyance for many months after the Supreme Court granted *cert* in *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 974 (Jan. 8, 2021) (granting *cert*)—another case involving RFS small refinery exemptions that had potential ramifications for Sinclair's case against EPA. *See, e.g.*, Clerk's Order, *Sinclair*, No. 19-1196 (D.C. Cir. Feb. 17, 2021), Doc. 1885774; Clerk's Order, *Sinclair*, No. 19-9562 (10th Cir. Dec. 17, 2019), Doc. 010110276184; Status Report, *Sinclair*, No. 19-9562 (10th Cir. filed Apr. 14, 2021), Doc. 010110507632.

When EPA filed the index to the administrative record in the D.C. Circuit case, the record showed that the Agency had never passed along to DOE the spreadsheet that Sinclair had submitted to show that the refinery is connected to multiple product and feedstock pipelines and operates in very competitive markets. Pet'rs' Opening Br. at 26, 36–41, *Sinclair Wyo. Refin. Co. v. EPA*, No. 19-1196 (D.C. Cir. filed Dec. 7, 2020), Doc. 1874754; *see also* EPA, Certified Index of Documents Comprising the Admin. Record, *Sinclair*, No. 19-1196 (D.C. Cir. filed

---

[5] Around the same time, RFA and other groups representing biofuels interests filed a petition for review to challenge EPA's decision to grant the 31 other SRE petitions. Petition for Review, *Renewable Fuels Ass'n v. EPA*, No. 19-1220 (D.C. Cir. filed Oct. 22, 2019), Doc. 1812533.

Aug. 17, 2020), Doc. 1856813. Under DOE's scoring system, this information would have raised Sinclair's score high enough to guarantee a 2018 exemption. Pet'rs' Opening Br. at 26, 36–41, *Sinclair*, No. 19-1196. Only when Sinclair received the administrative record did the Company realize that it had not received an exemption solely because of an oversight by EPA. As explained below, Sinclair spent the next 17 months trying to get EPA and DOE to correct this highly consequential mistake.

### C.    EPA's 2021 Exemption Decision

Throughout late 2019 and all of 2020, Sinclair repeatedly urged EPA to remedy its own error. On January 3, 2020, Sinclair also submitted a formal request urging DOE to rescore Sinclair's 2018 petition using the spreadsheet that the Company had filed. Since Sinclair's challenge to EPA's SRE denial was still pending before the D.C. Circuit, Sinclair implored EPA to settle the case, offering to dismiss its petition for review if EPA would ask DOE to rescore Sinclair's 2018 petition and then reconsider it based on the updated score. R-16 at 2. Although the Department of Justice lawyer delivered Sinclair's proposal to the Agency, Sinclair's counsel recalled later that EPA's counsel "couldn't get an answer from EPA." R-16 at 2.

Sinclair also asked its representatives in Congress to press its case with the Trump Administration, explaining that this was necessary "because the Trump

folks didn't want to grant any SREs in 2020." R-16 at 1–2. Sinclair "had been told for more than a year that we qualified" for a 2018 exemption "but that the White House didn't want EPA to grant any exemptions until after the election." *Id.*; *see also* R-2 at 1. It was widely reported in the press that EPA's small refinery exemptions were unpopular in farm states because they were believed to reduced demand for corn ethanol. Stephanie Kelly, *Trump, eyeing Farm Country, starts working on ethanol industry's year-old wishlist,* REUTERS (Sept. 24, 2020), https://www.reuters.com/article/us-usa-election-biofuels/trump-eyeing-farm-country-starts-working-on-ethanol-industrys-year-old-wishlist-idUKKCN26F1TY; Todd Neeley, *Grassley: 'Trump Takes RFS Exemptions Issue Off Political Table'*, DTN PROGRESSIVE FARMER (Sept. 15, 2020), https://www.dtnpf.com/agriculture/web/ag/blogs/ethanol-blog/blog-post/2020/09/15/grassley-trump-takes-rfs-exemptions; Ken Anderson, *SREs decision before the election? Grassley sounds skeptical*, BROWNFIELD NEWS (Sept. 8, 2020), https://brownfieldagnews.com/news/sres-decision-before-the-election-grassley-sounds-skeptical/; Humeyra Pamuk, *Republican Iowa senator says Trump EPA 'screwed us' with biofuel waivers*, REUTERS (Aug. 16, 2019), https://www.reuters.com/article/us-usa-ethanol-grassley/republican-iowa-senator-says-trump-epa-screwed-us-with-biofuel-waivers-idUSKCN1V61TW.

Sinclair later learned that EPA had in fact asked DOE to re-score the
Company's 2018 SRE petition based on the information that EPA initially failed to
send to DOE; and after the election and its aftermath, EPA finally granted
Sinclair's 2018 exemption petition on January 14, 2021 ("2021 Decision"). Ex. A
to Sinclair Supplement to Motion to Seal, *Sinclair*, No. 21-9528. The 2021
Decision recounted EPA's previous denial decision but acknowledged that
"[s]ubsequent to the August 9 Memo, Sinclair called attention to information that
EPA and DOE had not considered in their original evaluations." 2021 Decision at
2. As a result,

> EPA requested that DOE reconsider and rescore the SWR petition in
> light of the additional information. The new information changed
> DOE's evaluation and scoring such that DOE has recommended a 50
> percent exemption for the SWR for the 2018 compliance year.
> Accordingly, and consistent with the August 9 Memo and DOE's
> revised score for the SWR, EPA is taking a new action on SWR's
> 2018 SRE petition to grant the requested relief in full.

2021 Decision at 2. Sinclair received the decision from EPA on January 19 (the
same day EPA publicly announced that it was granting this exemption).[6] The next
morning, Sinclair contacted EPA about getting back the RINs it had been forced to
submit for 2018 compliance, assuming that EPA would promptly return Sinclair's
███████ Compliance RINs as it had done for all the other small refineries that

---

[6] The 2021 Decision also granted exemptions for 2019 to SWR and to Sinclair's
other refinery, neither of which is at issue in this case.

received 2018 exemptions after submitting RINs for 2018. R-12 at 1–3. EPA did not respond.

### D.    Litigation Over 2021 Exemption Decision

RFA quickly filed two cases to challenge EPA's decision: one in this Court (*Renewable Fuels Association v. EPA*, No. 21-9518) and one in the D.C. Circuit (*Renewable Fuels Association v. EPA*, No. 21-1032). Concurrently, RFA also filed motions for stays pending review in both courts that would prevent EPA from returning Sinclair's RINs until a decision on the merits was reached. Stay Motion, *RFA*, No. 21-1032 (D.C. Cir. filed Jan. 19, 2021), Doc. 1880795; Stay Motion, *RFA*, No. 21-9518 (10th Cir. filed Feb. 8, 2021), Doc 010110476855. RFA also requested and obtained an administrative stay in each court to ensure that the RINs would not be returned while the stay motions were pending. Order, *RFA*, No. 21-9518 (10th Cir. Feb. 10, 2021), Doc. 010110478139; Order, *RFA*, No. 21-1032 (D.C. Cir. Jan. 21, 2021), Doc. 1880862.

Because the new Administration was apparently skeptical of last-minute actions by the Trump Administration, EPA declined to take a position on the stay motion. Rather, it merely told this Court that "it did not object to the stay, provided that the Court is otherwise satisfied that the movant met all the requisite factors for a stay." Abeyance Motion and Response to Stay Motion, *RFA*, No. 21-9518 (10th Cir. filed Feb. 12, 2021), Doc. 010110479132; Abeyance Motion and Response to

Stay Motion, *RFA*, No. 21-1032 (D.C. Cir. filed Feb. 10, 2021), Doc. 1884716.

The Agency also asked both courts to hold the cases in abeyance pending a

decision from the Supreme Court in *HollyFrontier. Id. See, e.g.*, Abeyance Motion

at 1, *RFA*, No. 21-9518.

      Sinclair intervened in both cases. It did not oppose EPA's abeyance motions

but strongly opposed RFA's motions for a stay pending review, arguing that RFA's

likelihood of success on the merits was very low and that the exemption would not

cause irreparable harm to RFA or its members. Opposition to Stay Motion at 3,

*RFA*, No. 21-9518 (10th Cir. filed Feb. 12, 2021), Doc. 010110479685; Opposition

to Stay Motion at 3, *RFA*, No. 21-1032 (D.C. Cir. filed Feb. 10, 2021), Doc.

1884708.

      Although the stay motions were fully briefed in both courts, the parties

ultimately agreed that the Tenth Circuit was the proper venue.[7] On March 5, 2021,

this Court denied RFA's motion for a stay pending review and lifted the

administrative stay, allowing Sinclair's exemption to go into effect immediately. It

also granted EPA's unopposed motion to hold the case in abeyance pending a

---

[7] On February 21, 2021, the D.C. Circuit granted a request from RFA to withdraw
its stay motion and dissolve the D.C. Circuit's administrative stay. Clerk's Order,
*RFA*, No. 21-1032 (D.C. Cir. Feb. 20, 2021), Doc. 1886353. In the same order, it
also granted EPA's unopposed motion to hold the case in abeyance.

decision from the Supreme Court in *HollyFrontier*. Clerk's Order, *RFA*, No. 21-9518 (10th Cir. Mar. 5, 2021), Doc. 01011490133.

### E. Sinclair's Efforts to Get its RINs Back from EPA.

The next business day after the stay was lifted and Sinclair's exemption came back into effect, Sinclair again requested that EPA return its RINs. R-12 at 1–2. EPA did not respond. Over the next several days, Sinclair continued to plead with EPA leadership to return Sinclair's RINs in a series of increasingly exasperated emails. R-1, R-2, R-6. On March 10, 2021, Sinclair's counsel emailed the head of EPA's Air Office to express frustration about the way that Sinclair was being treated:

> If fairness is an issue here, it was terribly unfair (and borders on bad faith) that EPA never told us before now that there was even a possibility that you would refuse to return our RINs. EPA has never before refused to return RINS to a small refinery that received an exemption after it had already submitted RINs to meet a compliance deadline, and we had no reason to believe that this was even a possibility. Sinclair spent well over $300,000 in legal fees fighting RFA's stay motions . . . in both the D.C Circuit and the Tenth Circuit. We did so based on the reasonable assumption that, if the stay motions were denied, our RINS would be returned. So now, on top of everything else, the Company faces the prospect that it spent more than $300,000 for nothing.

R-2. The Company also repeatedly asked EPA to explain its legal basis for its refusal to reinstate Sinclair's RINs, but the Agency did not respond other than to acknowledge receipt of these requests. R-19.

Finally, in May 2021, Sinclair filed a petition for review in this Court in which it planned to argue that EPA had unlawfully refused to return Sinclair's RINs. Shortly thereafter, however, EPA decided that it wanted to revisit all its 2018 SRE decisions, asserting that it was required to reconsider them based on this Court's decision in *Renewable Fuels Association.* Thus, the Agency sought and obtained voluntary remands from both this Court and the D.C. Circuit (where challenges to all the other 2018 small refinery exemptions were pending). In this Court, EPA actually sought vacatur and remand of Sinclair's 2018 exemption, while only seeking remand of all the other 2018 decisions. Motion for Vacatur and Voluntary Remand at 1, *Sinclair Wyoming Refin. Co. v. EPA*, No. 21-9528 (10th Cir. filed Apr. 30, 2021), Doc. 010110515905; Motion for Vacatur and Voluntary Remand at 1, Sinclair, No. 19-1196 (D.C. Cir. filed Aug. 25, 2021), Doc. 1911606. Given that EPA had stated that it would reconsider all its 2018 decisions, Sinclair did not oppose the motion, believing that, in the end, it would be treated just like the other 31 small refineries that had received 2018 exemptions based on DOE's scoring matrix.

In May, 2021, this Court granted the motion to vacate and remand the 2021 Decision. Order, *Sinclair*, No. 21-9528 (10th Cir. May 19, 2021), Doc. 010110524643. RFA then voluntarily dismissed its petitions for review in this Court and in the DC Circuit. Clerk's Order, *RFA*, No. 21-9518 (10th Cir. May 25,

2021), Doc. 010110527491 (granting RFA's unopposed motion for voluntary dismissal); Clerk's Order, *RFA*, No. 21-1032 (D.C. Cir. May 26, 2021), Doc. 1900191 (granting RFA's unopposed motion for voluntary dismissal).

### F.    EPA's 2022 Exemption Decision and Alternative RFS Compliance Demonstration Approach

In April 2022, EPA issued a single decision that re-adjudicated 36 small refinery exemption petitions for the 2018 RFS compliance year. In doing so, EPA announced a new approach to small refinery exemptions: no small refinery can *ever* experience disproportionate economic hardship because (1) every refinery's compliance costs are the same—regardless of whether the refinery can blend its way to compliance or is forced to buy RINs at expensive, volatile prices from third parties on an unregulated market and (2) all refineries fully pass along their RFS compliance costs to their customers. EPA, *April 2022 Denial of Petitions for RFS Small Refinery Exemptions* at 2, EPA-402-R-22-005 (Apr. 2022), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1014EG4.pdf. Applying this new general theory, EPA denied all 36 of the 2018 SRE petitions that had been submitted, including Sinclair's.[8]

---

[8] Sinclair and other small refineries have challenged this decision, *see e.g.*, *Sinclair Wyo. Refin. Co. LLC v. EPA*, No. 22-1073 (D.C. Cir.) (and consolidated cases), and a similar decision in which EPA denied 69 SRE petitions for the 2016–21 compliance years. *See e.g., Wynnewood Refin. Co. LLC v. EPA*, No. 22-1178 (D.C. Cir.) (and consolidated cases).

Concurrent with this new denial decision, however, EPA provided "an alternative approach to demonstrating compliance for the 31 small refineries whose 2018 SRE petitions were originally granted and are now being denied after remand." *Id.* at 70. Specifically, EPA permitted those refineries to comply for 2018 without any "additional RIN retirements." EPA, *April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries* at 1, EPA-420-R-22-006 (Apr. 2022), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey= P1014EK3.pdf ("ACD"). They were thus allowed to keep the 2018 RINs that EPA had returned to them when their exemptions were granted in August 2019.

Shortly after EPA announced the ACD, Sinclair again contacted EPA to request the return of its 2018 RINs. R-11. Sinclair explained that based on the "recent decision to overturn [the prior 2018] exemptions but still not require these companies to retire any RINs against their 2018 RVO," the Company was requesting that EPA return its 2018 RINs. *Id.* On April 19, 2022, EPA denied this request and informed Sinclair that the Compliance RINs would not be returned. R-12 at 1. The only rationale EPA provided was that the 2021 Decision had been vacated before EPA issued the ACD. *Id.*

## SUMMARY OF ARGUMENT

This case challenges EPA's April 19, 2022 denial of Sinclair's request for the return of RINs worth ███████████████. As described in detail above,

in this denial, EPA's treatment of Sinclair was entirely different than its treatment of 31 other small refineries that were similarly situated.

Sinclair and 31 other small refineries all submitted timely petitions for 2018 SREs, and EPA granted all 32 petitions based on the same evaluation criteria. In all material respects, the circumstances of these refineries were identical except that EPA waited until 2021 to grant Sinclair's 2018 SRE petition, which it had wrongly denied in 2019 due to EPA's own acknowledged error. Before EPA granted any of the 2018 SREs, most of the 32 refineries had submitted RINs to EPA to satisfy their 2018 RFS compliance obligations[9]. EPA returned the RINs of the 31 small refineries shortly after granting their 2018 SREs but refused to return Sinclair's RINs even after granting its 2018 SRE.

There is ample case law holding that a federal agency "can be said to be at its most arbitrary when it treats similar situations dissimilarly" and that unless the agency provides "a reasoned explanation and substantial evidence in the record" to justify the disparate treatment, "its action is arbitrary and capricious and cannot be upheld." *Burlington Northern & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005) (citing *Willis Shaw Frozen Express, Inc. v. I.C.C.*, 587

---

[9] Some of these refineries opted to carry forward a deficit until the next compliance year, which is allowed in certain circumstances.

F.2d 1333, 1336 (D.C. Cir. 1978); *Ace Motor Freight, Inc., v. I.C.C.,* 557 F.2d 859, 862 (D.C. Cir. 1977)).

Here, EPA's rationale for refusing to return Sinclair RINs is not a "reasoned explanation" but another example of disparate treatment. The Agency's sole justification is that, when it advised the courts that it wanted to reconsider the 2018 exemptions for all 32 refineries, it moved for and obtained vacatur and remand of Sinclair's exemption, while it had sought and obtained a remand without vacatur for the other 31 exemptions. Yet the rationale for both motions was identical, and nowhere does EPA explain why it singled out Sinclair for disparate treatment when it asked the courts for a voluntary remand of its 2018 exemption decisions. Most frustrating to Sinclair is that it would have received its RINs back from EPA in 2019, when EPA returned the RINs of the other 31 small refineries, if EPA had not made a mistake in processing Sinclair's 2018 exemption petition—a mistake that EPA has since acknowledged and corrected.

The Court should strike down EPA's denial as arbitrary and capricious and, due to EPA's chronic history of ignoring statutory deadlines for acting on SRE petitions and its egregious behavior in this case, the Court should set a 90-day deadline for EPA to provide Sinclair an appropriate remedy on remand. Although such a deadline is unusual, it is justified here and consistent with decisions of two other U.S. Courts of Appeals in recent cases involving small refinery exemptions.

*Kern Oil & Refin. Co. v. EPA*, 840 Fed. App'x 188, 188 (9th Cir. 2021); Per

Curiam Order, *Sinclair*, No. 19-1196 (D.C. Cir. Dec. 8, 2021), Doc. 1925942.

## STANDARD OF REVIEW

Under the APA, this Court is required to "hold unlawful and set aside

agency action, findings, and conclusions found to be . . . arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

"Agency action is arbitrary and capricious only if the agency 'has relied on factors

which Congress has not intended it to consider, entirely failed to consider an

important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise.'" *In re FCC

11-161*, 753 F.3d 1015, 1132 (10th Cir. 2014) (quoting *Motor Vehicle Mfrs. Ass'n

v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Although this standard

is "narrow, it is not insubstantial." *Quest Commc'ns Int'l, Inc. v. FCC*, 398 F.3d

1222, 1229 (10th Cir. 2005).

Courts have observed that "a federal agency 'can be said to be at its most

arbitrary' when it 'treat[s] similar situations dissimilarly." *Kirk v. Comm'r of

Social Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (quoting *Steger v. Def.

Investigative Serv. Dep't of Def.*, 717 F.2d 1402, 1406 (D.C. Cir. 1983)). An

agency "cannot, despite its considerable discretion, treat similar situations

dissimilarly, and, indeed, can be said to be at its most arbitrary when it does so." *Steger v. Def. Investigative Serv. Dep't of Def.*, 717 F.2d 1402, 1406 (D.C. Cir. 1983). Numerous other courts have said the same thing. *See Great Lakes Commc'n Corp. v. FCC*, 3 F 4th 470, 477 (D.C. Cir. 2021); *Clean Wisconsin v. EPA*, 964 F.3d 1145, 1162 (D.C. Cir. 2020); *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1025 (D.C. Cir. 2018); *Westar Energy Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007); *Burlington Northern & Santa Fe. Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005).

## ARGUMENT

**I.    EPA's Refusal to Treat Sinclair Like Similarly Situated Parties was Arbitrary, Capricious, and an Abuse of Discretion.**

    **A.    EPA's Treatment of Sinclair Is Fundamentally Different than Its Treatment of the 31 Other Small Refineries that Received 2018 Exemptions.**

As noted above, 36 small refineries submitted petitions seeking SREs for 2018. Before its 2022 change of course, EPA determined that 32 of them were entitled to 2018 SREs. EPA granted exemptions to 31 of these refineries in August of 2019 but did not grant Sinclair' exemption until January 2021. Other than the timing of EPA's decisions, the refineries were all identically situated for purposes of the RFS program. They all filed timely SRE petitions, and EPA used the same criteria to determine that they were entitled to exemptions. As explained above, however, since EPA granted the SREs, its treatment of Sinclair has been

dramatically different that its treatment of the other 31 small refineries. And this different treatment has nothing to do with anything that Sinclair did or failed to do. It is a direct result of EPA own failure to share a key document with DOE when DOE was scoring the 2018 SRE petitions, as discussed above.

Because EPA had not issued any 2018 SREs before the 2018 compliance deadline, most of these 32 small refineries (including Sinclair) submitted RINs to EPA by March 31, 2019 to meet their 2018 RFS compliance obligations. Soon after granting SREs to 31 of these refineries, EPA returned the RINs that they had submitted for 2018 compliance. ACD at 6 ("After issuing the 2018 Decision, EPA returned the RINs retired for compliance to the small refineries that had demonstrated compliance with their 2018 obligations prior to receiving exemptions."). After issuing the 2018 exemption to Sinclair, however, EPA has repeatedly refused to return Sinclair's Compliance RINs. This is a clear example of EPA "at its most arbitrary." *Kirk v. Comm'r of Social Sec. Admin.*, 987 F.3d at 321. Worse still, were it not for EPA's own mistake, Sinclair would have been in exactly the same boat as the other 31 and would ███████████████████ ████████ back from EPA in August 2019.

When EPA decided to reconsider all the 2018 SRE petitions and then retroactively denied all of them in 2022, it again treated Sinclair differently than the other 31 small refineries that had previously received 2018 exemptions. In the

ACD, EPA effectively forgave the 2018 compliance obligations of the group of 31 and allowed them to ███████████████████████████ that it had returned to them after granting their exemptions in August 2019. Perhaps not surprisingly, EPA did not even mention Sinclair in the ACD. When Sinclair sought equal treatment and again requested the reinstatement of its Compliance RINs, EPA summarily denied the request. This means that, of all the small refineries that submitted timely SRE petitions for 2018 and met the then-existing criteria for exemptions, *only Sinclair* continues to bear the costs of complying with the 2018 compliance year requirements. Again, this is EPA "at its most arbitrary."

### B.   EPA's Explanation for Not Refunding Sinclair's 2018 Compliance RINs Is Unavailing.

Different treatment of similarly situated parties may be lawful when an agency offers "some reasonable justification for any adverse treatment relative to similarly situated competitors." *Great Lakes Comm'n Corp. v. FCC*, 3 F. 4th 470, 477 (D.C. Cir. 2021) (quoting *Baltimore Gas & Elec. Co. v. FERC*, 954 F.3d 279, 283–84 (D.C. Cir. 2020)). However, "[w]here an agency applies different standards to similarly situated entities and fails to support this disparate treatment with *a reasoned explanation and substantial evidence* in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington Northern & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005) (citing *Willis Shaw Frozen Express, Inc.*, 587 F.2d 1333, 1336 (D.C. Cir. 1978); *Ace Motor*

*Freight Inc.* 557 F.2d 859, 862 (D.C. Cir. 1977)) (emphasis added). EPA's rationale for treating Sinclair differently from the other similarly situated refineries falls far short of a "reasoned explanation based on "substantial evidence in the record." In fact, rather than being a "reasonable justification," it is simply another example of EPA's disparate treatment of Sinclair.

To explain its denial, EPA starts by noting that "EPA's January 2021 action granting a small refinery exemption to the Sinclair Wyoming Refinery (SWR) for 2018 . . . was immediately challenged." R-12 at 1. Of course, this hardly distinguishes it from the 2018 small refinery exemptions it granted to the other 31 refineries, which were also challenged. The denial decision goes on to say that "EPA sought voluntary remand and vacatur of the action, which the U.S. Court of Appeals for the Tenth Circuit granted in May 2021." This is the sole reason that EPA has offered for denying Sinclair's request for the return of its RINs—that the Court granted EPA's motion for voluntary remand and vacatur of Sinclair's 2018 exemption.

But this explanation just provides another example of EPA's disparate treatment of Sinclair. It is far from "a reasonable justification" of it. When EPA decided, in 2021, that it wanted to reconsider all the 2018 SRE decisions, it asked the Tenth Circuit to remand the Sinclair decision and the D.C. Circuit to remand all the others.  The only difference is that, in the Tenth Circuit, the Agency asked the

court for a voluntary remand and vacatur of Sinclair's 2018 exemption, while simply asking the D.C. Circuit for a voluntary remand of all the other 2018 exemptions without vacatur. Nowhere does EPA attempt to provide a "reasoned explanation and substantial evidence in the record" for again treating Sinclair differently than the 31 other small refineries that were similarly situated. There is absolutely "no reasonable justification" for it. None whatsoever.

Given that EPA had informed the courts that it wanted to reconsider all the 2018 exemptions, Sinclair reasonably believed that it would be fruitless to oppose EPA's motion for vacatur and remand. The Company had just spent more than $300,000 dollars to fight the stay motion, only to have EPA ignore this Court's denial of that motion. There was no reason to believe that, even if it could persuade the Court to remand its 2018 exemption without vacatur, EPA would actually return Sinclair's 2018 RINs. Sinclair had every right to believe that, on remand, it would finally be treated just like the other 31 small refineries that had previously received 2018 exemptions.

Moreover, EPA's justification for seeking remand and vacatur of Sinclair's 2018 SRE exemption and remand without vacatur for all the other 2018 exemptions is identical. In both cases, EPA simply explained that it sought remand of the decisions to reconsider them "in light of the Tenth Circuit's decision in *Renewable Fuels Association et al v. EPA*, 948 F.3d 1206, 1244–49 (10th Cir,

2020), *rev'd in part sub nom. Holly Frontier Cheyenne Refining, LLC, et al. v. Renewable Fuels Association, et al.*, 141 S. Ct. 2172 (2021))." EPA Mot. for Voluntary Remand, *Sinclair Wyo. Refin. Co. v. U.S. EPA*, No. 19-1196 at 9–13 (D.C. Cir. filed Aug. 25, 2021), ECF No. 1911606. EPA's Mot. for Vacatur and Voluntary Remand, *Sinclair Wyo. Refin. Co. v. U.S. EPA*, No. 21-9528, at 13–15 (10th Cir. filed Apr. 30, 2021), ECF. No. 010110515905. EPA provided no explanation as to why Sinclair's 2018 SRE should be singled out for vacatur.

As noted above, *see supra*, note 6, when EPA granted Sinclair's 2018 SRE in January 2021, it also granted 2019 SREs to Sinclair, even though it had not yet taken action on any other 2019 SRE petitions. (As with the 2018 exemption, EPA refused to return the RINs that Sinclair submitted for 2019.) Although the 2019 SREs are not at issue in this case, EPA's rationale for seeking their vacatur is remarkable. The Agency argued that "[v]acatur would thus *preserve the equity* between Sinclair and other small refineries that complied with their *2019 obligations* by retiring RINs while their petitions for extension of the small refinery exemption in 2019 were still pending." *See, e.g.*, *Sinclair*, No. 21-9528, at 16–17 (10th Cir. filed Apr. 30, 2021), ECF. No. 010110515905 (emphasis added). Tellingly, EPA makes no reference at all to equity between Sinclair and other small refineries when it comes to 2018 exemptions. It is jarring to see EPA express

concern about "preserving the equity" between Sinclair and other small refineries for 2019, when it has gone out of its way to treat Sinclair *inequitably* for 2018.

The record in this case is also notable for what EPA *does not* address. Had it not been for EPA's failure to pass along an important document to DOE when DOE was scoring Sinclair's 2018 petition, Sinclair would now be in the exact same position as the other 31 small refineries that received exemptions (and the return of their 2018 RINs) in August 2019. Yet EPA, as far as the record shows, made no attempt to consider what Sinclair's position would have been had it not been for EPA's own mistake, or what administrative actions the Agency might take to treat Sinclair equitably compared to the 31 other small refineries that are similarly situated. *See Westar Energy Inc., v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) (explaining that "[a] fundamental norm of administrative procedure requires an agency to treat like cases alike."). Thus, EPA utterly "failed to consider an important aspect of the problem" when Sinclair asked the Agency to return its RINs while those RINs were still valuable. *See In re FCC 11-161*, 753 F.3d at 1132 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

In denying this request, EPA has treated Sinclair much differently than all other similarly situated parties. And EPA has failed entirely to fulfill its "statutory duty—imposed by the APA and owed to all *other* regulated parties—to provide some reasonable justification for any adverse treatment relative to similarly

situated competitors." *ANR Storage Company v. FERC*, 904 F.3d 1020, 1025 (D.C. Cir. 2018) (emphasis original). EPA's refusal to return Sinclair's 2018 RINs is arbitrary and capricious.

## II.     The Court Should Set a Deadline of 90 Days for EPA to Act on Remand.

Given EPA's history of delay and inaction regarding Sinclair's petition, the Court should order EPA to issue a new decision on Sinclair's request within 90 days of the Court's opinion in this case—as two other U.S. Courts of Appeal have recently done in cases regarding small refinery exemptions.

Admittedly, such a deadline is unusual. Courts do not dictate a remand's "time dimension" absent "substantial justification." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 544–45 (1978). And they establish such deadlines "only in the most egregious of cases." *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d 626, 629 (D.C. Cir. 1987).  But this is just such a case, and there is substantial justification for the Court to set a deadline on remand.

Congress has required EPA to take prompt action on small refinery exemptions, mandating that the Agency act on any small refinery exemption petition within 90 days. 42 U.S.C. § 7545(o)(9)(B)(iii) ("The Administrator *shall act* on any petition submitted by a small refinery for a hardship exemption not later than 90 days after the receipt of the petition.") (emphasis added). Yet EPA routinely ignores this statutory duty, as it has done in this case. *See* Gov't

Accountability Office, *Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program* at 20 (Nov. 2022), https://www.gao.gov/assets/gao-23-104273.pdf ("EPA issued decisions after the 90-day deadline 89 percent of the time (190 out of 214 decisions).").

      In two recent cases, the Ninth Circuit and D.C. Circuit—frustrated with EPA's lengthy delays regarding small refinery exemptions—each set a 90-day deadline for EPA's action on remand. In *Kern Oil & Refin. Co.*, 840 Fed. App'x 188, 188 (9th Cir. 2021) (unpublished), the Ninth Circuit instructed EPA to "proceed expeditiously on remand and to issue a new decision within 90 days of this order." *Id.* Likewise, when the D.C. Circuit granted the Agency's motion to voluntarily remand the cases (including Sinclair's) challenging EPA's 2018 SRE decisions in following the *HollyFrontier* opinion, the Court imposed a 90-day deadline on remand, noting that "a time limit is warranted in light of the 90-day statutory deadline and EPA's delay."). Per Curiam Order, *Sinclair*, No. 19-1196 (D.C. Cir. Dec. 8, 2021), Doc. 1925942.

## CONCLUSION

      For the foregoing reasons, the Court should vacate EPA's decision to deny Sinclair's request for the return of its RINs and issue an order directing EPA to take further action on remand to provide Sinclair with an appropriate remedy within 90 days of the Court issuing its opinion.

Date: June 8, 2023

Respectfully submitted,

*/s/ Jeffrey R. Holmstead*

Jeffrey R. Holmstead
Brittany M. Pemberton
Bracewell LLP
2001 M Street N.W.
Suite 900
Washington, D.C. 20036
(202) 828-5800 (telephone)
(202) 857-4812 (facsimile)
Jeff.Holmstead@bracewell.com
Brittany.Pemberton@bracewell.com

*Counsel for Petitioner*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tenth Circuit Rule 28.2(C)(2), Sinclair respectfully requests oral argument. This case raises important issues of first impression involving EPA's implementation of the Renewable Fuel Standard Program's small refinery exemption. Oral argument would be helpful to the disposition of this appeal as the panel considers how to resolve those issues.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

- this document contains 9,787 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

- This document has been prepared in a proportionally spaced typeface using Microsoft® Word for Office 365 in 14-point Times New Roman.

Date: June 8, 2023

*/s/ Jeffrey R. Holmstead*
Jeffrey R. Holmstead

## CERTIFICATE OF DIGITAL SUBMISSION

In accordance with the court's CM/ECF User's Manual, I hereby certify that:

1.  all required privacy redactions have been made per Tenth Circuit Rule 25.5;

2.  hard copies of these pleadings that may be required to be submitted to the court are exact copies of the ECF submissions; and

3.  the ECF submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, CrowdStrike Version 6.52.16606.0, last updated on March 28, 2023, and according to the program are free of viruses.

Date: June 8, 2023

*/s/ Jeffrey R. Holmstead*
Jeffrey R. Holmstead

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Petitioner's Opening Brief was today, this June 8, 2023, served through the Court's CM/ECF system on all registered counsel.

Date: June 8, 2023

*/s/ Jeffrey R. Holmstead*
Jeffrey R. Holmstead